**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

GLEN P. WATKINS                                    CIVIL ACTION NO. 3:10-cv-00025

VERSUS                                             JUDGE ELIZABETH ERNY FOOTE

LANNY JOHNSON, ET AL.                              MAGISTRATE JUDGE HORNSBY

---

## MEMORANDUM RULING

Before the Court are cross Motions for Summary Judgment [Record Documents 19 and 21].  Plaintiff Glenn P. Watkins claims a "discriminatory failure to re-hire" by the Franklin Parish School system relying on a variety of federal and state law provisions.  Made defendants are the School Board of Franklin Parish and the Superintendent of the School Board, Dr. Lanny Johnson.  The Court holds Plaintiff has failed to offer sufficient evidence to meet his Federal Rule of Civil Procedure 56 burden including his burden of proof in the third-step of the McDonnell Douglas inquiry, i.e., to show that Defendants' proffered non-discriminatory reason is pretextual.  Additionally, the "same-actor" inference applies in this case: the same individuals who initially decided to hire Watkins later refused to re-hire him.  This fact creates a "strong inference" that Defendants' proffered reason for refusing to re-hire Watkins is not pretextual.  For the reasons outlined below, this Court **GRANTS** Defendants' Motion for Summary Judgment [Record Document 19] and **DENIES** Plaintiff's Motion for Summary Judgment [Record Document 21].

**FACTUAL BACKGROUND**

Plaintiff Watkins, a black male, has a Class A life-term Teaching Certificate issued by the Louisiana Department of Education to teach Social Studies and English.  Watkins was initially hired by the Franklin Parish School Board in 2006 following an interview with Ms. LaTanga Blackson, the Personnel Director for the School Board.[1]  After Watkins's interview, Ms. Blackson discussed hiring Watkins with Defendant, Dr. Johnson, the Superintendent of the Franklin Parish School Board.  Following this discussion, Dr. Johnson and Ms. Blackson made the initial recommendation in 2006 to the Franklin Parish School Board to hire Watkins for a teaching position in Franklin Parish.  Watkins was employed by the Defendant Franklin Parish School Board during the 2006-2007 and 2007-2008 school years.

During the 2006-2007 school year, Watkins taught Social Studies and History at Gilbert Junior High School.  At the end of this school year, Watkins was asked to resign, according to the resignation form signed by Watkins, "for the reasons of relocation." Watkins was transferred within Franklin Parish to Crowville School for the 2007-2008 school year to teach Physical Education to fourth to sixth grade students.  At the end of this school year, Watkins was again asked to resign, this time according to a second resignation form signed by Watkins, "for reasons of position for re-employment

---

[1]The Court notes that Ms. Blackson is a black female.

unavailable."[2]   Then, during the summer of 2009, Watkins applied for re-employment

with the School Board.  Defendant Dr. Johnson, along with Ms. Blackson, refused to

recommend Watkins for re-employment by the School Board, and thus the School Board

decided to not rehire Watkins.  Instead, Defendants hired other individuals over Watkins

who did not have a teaching certification equivalent to the certification held by

Watkins.[3]

Defendants state that their refusal to rehire Watkins was based on Watkins's

inability to control or manage student behavior.  This assessment was founded on their

prior experiences in employing Watkins at schools in Franklin Parish during the 2006-

2007 and 2007-2008 school years.  Defendants have submitted affidavits from the

administrators at Gilbert and Crowville which paint a dim picture of Watkins's teaching

abilities.  These affidavits state that, in addition to the more benign reasons stated on

the resignation forms, Watkins was asked to resign in 2007 and 2008 largely because

he lacked necessary management skills and was unable to control students.[4]

_____

[2]Dr. Johnson explained in his deposition that the 2007-2008 position at Crowville
was a temporary position open only for the period in which another teacher remained
on sabbatical leave.  The person returned from sabbatical leave to start teaching again
at the beginning of the 2008-2009 school year, and thus the position was no longer
open or available to Watkins.

[3]Dr. Johnson, in his deposition, stated that although there is no rigid procedure
for determining whether to hire an applicant, generally Dr. Johnson and Ms. Blackson,
along with the various principals from the schools, have a role in making the hiring
decisions.

[4]In his affidavit, the Superintendent Dr. Johnson states that Watkins "exhibited
an inability to maintain adequate classroom control due to a lack of management skills"
at Gilbert and exhibited "an inability to control his classroom" at Crowville, despite

Defendants also submitted school records which they argue demonstrate

Watkins's incompetency as a teacher.  On personnel evaluation forms prepared during

the 2006-2007 and 2007-2008 school years, the Principals at both Gilbert and Crowville

noted deficiencies in Watkins's ability to manage students, keep students on task, and

monitor student behavior.  Defendants also have submitted a "Referral List" from the

2007-2008 school year that notes 15 different instances in which Watkins referred a

student to the Principal at Crowville for disciplinary reasons.[5]  Nonetheless, despite

these noted deficiencies, the Principals at Gilbert and Crowville ranked Watkins's

"Overall Status" as "Needs Improvement" or "Satisfactory" on the personnel evaluation

forms, which are the second-best and best rankings, respectively, on a four-level scale.

In fact, Crowville Principal Terri Shirley, on the personnel evaluation form prepared by

---

assistance and multiple efforts to assist him.  Gilbert Principal George Johnson states
that Watkins "lacks those qualities necessary to insure the proper use of instructional
time and lacks the ability to maintain control of his classroom."  Principal Johnson,
during his evaluations of Watkins, observed students sleeping during instruction and
students not on task during or engaged in lessons.  Principal Johnson states in his
affidavit that he advised the personnel director of the School Board that he did not want
Watkins assigned to Gilbert for the 2007-2008 school year.  Likewise, Crowville Principal
Terri Shirley, in her affidavit, states that she "was not in a position to recommend
Watkins for continued employment at Crowville in any position" because of Watkins's
problems controlling and supervising students.  "Had [Watkins] not resigned, she would
have recommended his termination."

[5]The Court notes that Defendants have not submitted any baseline evidence to
which the Court could compare the number of referrals by Watkins during the 2007-
2008 school year.  Although Defendants argue that the number is high, the Court
cannot determine whether 15 referrals is out of the ordinary for grades four to six for
an entire school year, particularly for a physical education class where students are
given greater freedom to engage in physical activity.

her toward the end of the 2007-2008 school year, checked "Yes" for "The Evaluatee Fulfills All Critical Job Responsibilities."

Watkins claims that he was not re-employed by the School Board, despite his certification, because of his race and gender. Watkins has provided evidence that other individuals, who did not have teaching certificates issued by the Louisiana Department of Education, were employed by the Franklin Parish School Board to teach over Watkins despite the fact that Watkins had such certification. Additionally, Watkins contends that any deficiencies, including those noted by administrators in his personnel evaluation forms during the 2006-2007 and 2007-2008 school years, were never shared or discussed with him.[6] He stated in his deposition that the only reasons given for the requests for his resignation were the stated reasons provided on the resignation forms.

Watkins claims that the Defendants' refused to hire him because of his race and gender,[7] thereby violating Title VII, 42 U.S.C. § 2000e-2(a). Watkins also alleges a

---

[6]The Evaluation Form from the September, 2006 evaluation conducted at Gilbert by Principal Johnson records a "Post-Observation Conference" between Principal Johnson and Watkins on September 19, 2006 at 1:45, but Watkins stated in his deposition that the evaluation and the deficiencies recorded were never discussed with him. Principal Shirley, in her affidavit, stated that she held a conference with Watkins "on at least four occasions during the school year" where she stressed the need of Watkins to maintain control of his students, but no records are provided of these conferences. Watkins, in his deposition, acknowledged that he met "maybe twice" with Principal Shirley to discuss management and discipline, but then stated Ms. Shirley, never had "any discussions or offere[d] [him] assistance on classroom management, controlling kids in [his] class."

[7]Defendants claim that Watkins has withdrawn his allegation that he was discriminated against based on his gender. (Def.'s Mem Supp. Summ. Jud., at 1.) Watkins contends he has not withdrawn his gender discrimination claim. (Pl.'s Mem. Opp. Summ. Jud., at 2.) Nonetheless, Watkins does not argue in his briefs nor submit

"parallel cause of action" for violations of 42 U.S.C. § 1981 and § 1983,[8] and a cause of

action under Louisiana Constitution Articles 2, 4, and 12[9] and under Louisiana Revised

Statutes Section 23:332.[10]  Finally, Watkins claims that Defendants, by hiring and

paying wages to persons not certified to teach in public schools, violated Louisiana

Revised Statutes Sections 17:413 and 17:414, and thereby offended Louisiana

Constitution Articles 2 and 4.

## LAW AND ANALYSIS

When considering a racial discrimination claim where there is no direct evidence

of discrimination, this Court must apply the well-established McDonnell Douglas burden-

---

evidence showing any basis for gender discrimination.  Thus, summary judgment is warranted on his gender discrimination claim.  Fed. R. Civ. Proc. 56.

[8]The inquiry into intentional discrimination is essentially the same for individual action brought under sections 1981 and 1983, and Title VII.  See Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996); Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996).

[9]The Court presumes that Plaintiff intended to state a cause of action under Louisiana Constitution Article 1, Section 2 (Due Process), Section 3 (Equal Protection), and Section 12 (Equal Access to Public Areas), rather than Louisiana Constitution Article 2 (Distribution of Powers), Article 4 (Executive Branch), and Article 12 (General Provisions).  Summary judgment is warranted on Plaintiff's due process, equal protection, and access to public facilities claims under the Louisiana Constitution.  See La. Const. Art. 1, §§ 2, 3, 12.  Plaintiff does not argue these claims in its Memorandum in Opposition to Summary Judgment, and does not otherwise present evidence showing that summary judgment is improper on his claims under the Louisiana Constitution.

[10]Louisiana courts look to federal anti-discrimination law when interpreting Louisiana anti-discrimination laws, and thus the analysis for a violation of the Louisiana state laws is essentially the same as the analysis demanded by the federal laws.  Baker v. FedEx Ground Package Sys. Inc., 278 Fed. Appx. 322, 327 (5th Cir. 2008); Alleman v. La. Dept. of Econ. Devel., 698 F. Supp. 2d 644, 656 n.7 (M.D. La. 2010).

shifting framework.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973); <u>Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.</u>, 482 F.3d 408,

411-12 (5th Cir. 2007).  First, the plaintiff must demonstrate a prima facie case of

discrimination by showing: (1) that the plaintiff belonged to a protected class; (2) that

the plaintiff applied for a position for which the plaintiff was qualified and for which

applicants were being sought; (3) that the plaintiff was rejected; and (4) that another

individual not belonging to the protected class was hired for the position.  <u>Burrell</u>, 482

F.3d at 412.  If the Plaintiff demonstrates a prima facie case, the Defendant must then

articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff.  Defendant

bears only a burden of production at this second step, and the burden of persuasion

remains at all times on the plaintiff.  <u>See</u> <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305,

309 (5th Cir. 2004).  If the Defendant meets its burden of production, the plaintiff must

then offer sufficient evidence to create a genuine dispute of material fact either: (1)

that the employer's proffered nondiscriminatory reason is a pretext; or (2) that another

discriminatory reason was a motivating factor despite the validity of the proffered

nondiscriminatory reason.[11]  <u>Burrell</u>, 482 F.3d at 411-12; <u>see also</u> <u>Rachid</u>, 376 F.3d at

312-13.  To show pretext, Watkins "must produce substantial evidence indicating that

the proffered legitimate nondiscriminatory reason is a pretext for discrimination."

<u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003) (citing <u>Reeves v. Sanderson</u>

---

[11]Watkins does not attempt to argue or show that the Defendants' proffered reason for not hiring Watkins, while true, is only one reason and that another motivating factor is the plaintiff's protected characteristic.  <u>See</u> <u>Rachid</u>, 376 F.3d at 310-13.

Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Watkins may establish pretext either by showing that he is clearly better qualified than

those selected for the position or by showing that the employer's proffered explanation

is false or unworthy of credence.  Burrell, 482 F.3d at 412; Celestine v. Petroleos de

Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001).

Defendants argue that summary judgment is warranted against Watkins for two

reasons: (1) Watkins is unable to show that he is sufficiently "qualified" at the first step

of McDonnell Douglas, and thus cannot establish a prima facie case of discrimination;

and (2) Watkins is unable to offer sufficient evidence at the third step of McDonnell

Douglas to create a genuine dispute that the employer's reason for not hiring Watkins –

his demonstrated inability to manage and control students – is pretextual.[12]

For the purposes of considering the cross motions for summary judgment, this

court assumes that Watkins was sufficiently minimally qualified for the teaching

positions available with the Franklin Parish School Board,[13] and that he has established

---

[12]Dr. Johnson also argues that Watkins cannot maintain a claim against him in his official or individual capacities under Title VII or Louisiana law.  This Court does not discuss this additional argument for summary judgment on the Title VII and Louisiana law claims against Dr. Johnson, because it finds that summary judgment is otherwise warranted on Watkins's claims.

[13]Defendants argue that Watkins was not "qualified" under McDonnell Douglas for the teaching positions because he could not sufficiently control or manage a classroom of students.  The Court notes that "performance concerns are more appropriately addressed in assessing a plaintiff's assertion that an employer's articulated reasons for its action was a pretext."  Taylor v. Peerless Indus. Inc., 322 Fed. Appx. 355, 357 n.1 (5th Cir. 2009).  Simply because an employer is not pleased with an employee's performance does not mean that the employee lacks the qualifications needed at the prima facie stage of the McDonnell Douglas analysis.  Berquist v. Wash.

a prima facie case.  Also, the Court finds that Defendants have proffered a legitimate, nondiscriminatory reason – that Watkins demonstrated an inability to manage and control students – thereby satisfying their burden under the second step of McDonnell Douglas.  However, in this case, summary judgment is warranted for Defendants because Plaintiff cannot meet his burden at the third step of McDonnell Douglas.

First, Watkins attempts to discredit the evidence supporting Defendants' nondiscriminatory reason for refusing to hire Watkins.[14]  However, it remains uncontroverted that Watkins had issues managing and controlling students.  Despite the rankings given for his "Overall Status" on his personnel evaluations from the 2006-2007

---

Mut. Bank, 500 F.3d 344, 350-51 (5th Cir. 2007) ("Although Washington Mutual submitted evidence that Berquist's supervisors were not pleased with his performance, this evidence does not prove a lack of qualifications at the prima facie stage."); see Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988) ("[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.  The lines of battle may then be drawn over the employer's articulated reasons for its action and whether that reason is a pretext for age discrimination."); see generally Owens v. N.Y. City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (holding that the "qualification" element of a prima facie case "requires only a minimal showing of qualification" or only the "basic skills necessary for performance of the job").

[14]The evidence, viewed in the light most favorable to Watkins, does not indicate that Watkins is wholly unable to teach.  The personnel evaluations that ranked Watkins's "Overall Status" as "Needs Improvement" or "Satisfactory" cannot be read as indicating significant deficiencies in teaching ability given the lower rankings of "Unsatisfactory" and "Intensive Assistance" on the same scale.  These rankings of his "Overall Status" arguably conflict with the dim picture painted by the more recently prepared affidavits of Dr. Johnson and the Principals at both Gilbert and Crowville.  But Plaintiff must show more than that he was able to teach.  He must show that the stated reason for Defendants' refusal to hire him was not the real reason for this refusal.  See Laxton, 333 F.3d at 579-80.

and 2007-2008 school years, these personnel evaluations repeatedly note that Watkins was deficient in his management and control of students.  Watkins's contention that the school administrators never shared their concerns regarding his deficiency does not demonstrate that the administrators' concerns were pretextual.  Watkins simply offers nothing that contradicts this recorded deficiency.

Second, Watkins argues that the School Board's failure to hire him over uncertified teachers violated Louisiana law and thus demonstrates pretext.  Watkins submitted Defendants' answers to Plaintiff's interrogatories which indicate that Defendants hired individuals over Watkins who were not certified by the Louisiana State Board of Education to teach subjects in which Watkins was certified.[15]  "Under Louisiana law, a school district must hire a certified teacher for a permanent position when one is available."  Riley v. School Board Union Parish, 379 Fed. Appx. 335, 338 (5th Cir. 2010) (citing La. Rev. Stat. Ann. § 17:413).[16]

---

[15]Watkins has submitted Defendants' answers to Plaintiff's interrogatories which show that four white individuals and two black females were employed for the 2009-2010 school year to teach Social Studies and English in Franklin Parish although they were not "certified" in these subjects.  Watkins has also submitted Defendants' answers to Plaintiff's interrogatories which show that white and female individuals were employed to teach Social Studies and English although they had simply a Practitioner License or Temporary Authorization to Teach, and not a Teaching Certificate like that held by Watkins.

[16]Watkins interprets "certification" in Louisiana Revised Statutes 17:413 and 17:414 to mean a "Teaching Certificate" issued by the Louisiana Department of Education.  Louisiana courts have held that "certified" teachers, rather than "temporarily authorized" teachers, should be placed in the classroom "whenever possible."  Rogers v. Avoyelles Parish School Bd., 98-1926 (La. App. 3 Cir. 5/5/99), 736 So. 2d 303, 306.
  However, the Regulations promulgated by the Louisiana Department of Education pursuant to its powers under Louisiana Revised Statute 17:7(6)(a)(i) are not

However, a violation of the state law, which favors the hiring of certified teachers when they are available, Rogers v. Avoyelles Parish School Bd., 98-1926 (La. App. 3 Cir. 5/5/99), 736 So. 2d 303, 306, does not necessarily indicate pretext.  Defendants' proffered nondiscriminatory reason is essentially that Watkins was, despite his certification, not competent to teach because of his inability to manage and control students.  Even assuming arguendo that  Defendants refusal to hire Watkins did violate

---

so strict.  These Regulations require that individuals have an "official teaching authorization" to teach in public schools.  La. Admin. Code tit. 28, pt. CXXXI, § 301 (2010).  The Regulations state that there are six types of "standard teaching authorizations," including Type A lifetime teaching certificates like those held by Watkins and practitioner licenses.  Id. § 303.  The Regulations also state that there are four types of nonstandard teaching authorizations, including the "Temporary Authority to Teach," "Out-of-Field Authorization to Teach," and "Temporary Employment Permit." If the district is unable to hire a "regularly certified, competent, and suitable person" the district may submit an application for an individual to the State Board of Education to teach pursuant to a "Temporary Authority to Teach" or "Out-of-Field Authorization to Teach"  Id. §§  323, 325.  A "Temporary Employment Permit" may be obtained by application from the individual, or by application from the "employing authority" with an affidavit stipulating that there are no other applicants meeting all certification requirements for the specific teaching position.  Id. § 326.  Thus, the Regulations recognize that schools may hire individuals pursuant to these nonstandard teaching authorizations alongside the standard teaching authorizations when certain prerequisites are met.

The Louisiana Supreme Court has recognized that the Board of Education has the power to grant temporary certificates when no legally qualified person is available for the position.  La. Rev. Stat. Ann. § 17:7(6); Sibley v. Ascension Parish School Board, 64 So. 2d 221, 222-223 (La. 1953).  It is unclear whether the Board of Education can grant a temporary certificate when there is an available "regularly certified" teacher, but this teacher is not "competent" or "suitable" for the position.  Defendants, here, effectively claim that they have refused to rehire Watkins because he is not competent, although certified.  The Court makes no judgment as to whether this was or was not a violation of Louisiana Revised Statutes 17:413 or 17:414.

Louisiana Revised Statutes Section 17:413 and 17:414,[17] Watkins has not shown how a

violation of state law demonstrates that Defendants' proffered nondiscriminatory reason

is unworthy of credence.  Nor has Watkins shown that his certification alone makes him

"clearly better qualified" than any non-certified but "authorized" teachers.[18]  See

Celestine, 266 F.3d at 357.  Given these facts, this Court refuses to turn what may be a

potential state law violation into a right to relief under federal anti-discrimination law,[19]

---

[17]La. Rev. Stat. Ann. § 17:413 provides: "No person shall be appointed to teach without a written contract for the scholastic year in which the teaching is to be done. Every teacher shall hold a certificate of a grade sufficiently high to meet the requirements of his position.  Parish superintendents of schools shall ascertain definitely, before contracting with a teacher, that the teacher holds a certificate issued by the state board of education."
      La. Rev. Stat. Ann. § 17:414 provides: "Before receiving any remuneration for services rendered, every teacher of any school supported wholly or in part with public funds must have been fully qualified to teach in the public schools of Louisiana and have been employed by the school authority authorized to employ teachers."

[18]Defendants hired other individuals over Watkins pursuant to non-standard authorizations to teach, despite their lesser "certification," because they were more "competent" than Watkins.  See La. Admin. Code. tit. 28, pt. CXXXI, §§ 301, 303, 323, 325, 326.  A certified individual who demonstrates incompetency is not "clearly better qualified" than a non-certified individual who is competent.  See Celestine, 266 F.3d at 357 (quoting Deines v. Texas Dept. of Prot. & Reg. Servs., 164 F.3d 277, 281 (5th Cir. 1999) (While evidence of the plaintiff's superior qualifications is probative of pretext, "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question.' ")).

[19]Whether the hiring of individuals without a teaching certificate over Watkins was proper under state law is not an issue before this Court.  The Court notes that even if the issue were before it, the evidence does not indicate that unauthorized individuals were hired to teach in Franklin Parish, or that the School Board hired individuals in violation of State Regulations.  Watkins does not submit evidence that the individuals listed as "uncertified" in Defendants' responses to interrogatories were not authorized to teach by the State of Louisiana pursuant to the State Regulations regarding the hiring of

absent a sufficient showing that the nondiscriminatory reason – Watkins's incompetency – is pretextual.  See also Riley, 379 Fed. Appx. at 341 (holding that fact that certification of teacher hired over certified plaintiff had lapsed at the time the teacher was hired did not raise a fact issue as to discriminatory animus).

Ultimately, a decision as to whether judgment as a matter of law is appropriate turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "  Laxton, 333 F.3d at 579 (quoting Reeves, 530 U.S. at 148-49, 120 S.Ct. 2097).  "[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  Reeves, 530 U.S. at 147, 129 S.Ct. 2097.  However, Watkins has simply not set forth evidence that could lead a rational fact-finder to conclude that the Defendants' proffered nondiscriminatory reason is false.  See id. at 147-48, 129 S.Ct. 2097.

The propriety of a grant of summary judgment in favor of Defendants is further strengthened by the presence of the "same-actor" inference in this case.  The

---

uncertified teachers.  The record is also devoid of any evidence that the School Board did not submit the required affidavits stating that no other "regularly certified, competent, and suitable person" is available for the position.  See La. Admin. Code tit. 28, pt. CXXXI, §§  301, 303, 323, 325, 326.

The Court also notes that Watkins was hired to teach Physical Education at Crowville with an "Out-of-Field Authorization to Teach" during the 2007-2008 school year. (Franklin Parish School Board, Letter of Acceptance, Glen Watkins, July 26, 2007.) The Defendants' answers to interrogatories list Watkins as an "uncertified" teacher for this year.

Superintendent Dr. Johnson and the Personnel Coordinator Ms. Blackson were responsible for the initial decision to hire Watkins in 2006 and the later decision not to rehire Watkins in 2009.  If the same person is responsible for both the hiring and the adverse employment decisions regarding an individual, then there is an inference that discriminatory animus was not the reason for the adverse employment action.  Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) (citing Pound v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.")).  The fact that the same individuals both hired and then refused to rehire Watkins creates a "strong inference" at the third step of the McDonnell Douglas inquiry that the reason stated for the adverse employment decision is not pretextual.  Proud v. Stone, 945 F.2d at 798, cited with approval in, Brown, 82 F.3d 651.  Particularly when the same-actor inference is implicated, the plaintiff must come forward with more than a "tenuous inference of pretext" to meet his burden at this third step.  Morrison v. Weyerhaeuser Co., 119 Fed. Appx. 581, 586 (5th Cir. 2004) (citing West v. Nabors Drilling USA, Inc., 330 F.3d 379, 385 (5th Cir. 2003)); see also Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097 (holding that judgment as a matter of law remains appropriate when, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude the action was discriminatory").

Page 14

As in <u>Brown</u>, the evidence, construed in the light most favorable to Watkins, is not sufficiently egregious to overcome the same-actor inference.[20]  82 F.3d at 658. Watkins has created at best a weak issue or tenuous inference of pretext.  Particularly given that the same-actor inference is triggered in this case, Defendants have shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).

Accordingly,

**IT IS ORDERED THAT** Defendants' Motion for Summary Judgment [Record Document 19] be and is hereby **GRANTED**, and Plaintiff's Motion for Summary Judgment [Record Document 21] be and is hereby **DENIED**.

A Judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** Shreveport, Louisiana, this 30th day of December, 2010.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[20]The fact that Ms. Blackson is also a member of the same protected class as Watkins enhances this same-actor inference.  <u>Brown</u>, 82 F.3d at 658.